## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MFRP Corp., D/B/A Squire Nightclub, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| United States Small Business | ) | Case No. |
| Administration; Isabella Casillas | ) | |
| Guzman, in her | ) | |
| Official Capacity as | ) | |
| Administrator of the Small | ) | |
| Business Administration; Janet | | |
| Yellen, in her Official | | |
| Capacity as United States | | |
| Secretary of Treasury; and The | | |
| United States of America, | | |
| | | |
| Defendants. | | |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff MFRP Corp. d/b/a Squire Nightclub ("MFRP"), for its Verified Complaint,
states and alleges as follows:

## INTRODUCTION

1. This action seeks judicial review of the decision by Defendant United States Small Business
   Administration ("SBA") and its Administrator to deny forgiveness to Plaintiff MFRP Corp.,
   d/b/a Squire Nightclub ("Squire") of a Paycheck Protection Program ("PPP") loan it obtained
   pursuant to the Coronavirus Aid, Relief and Economic Security Act (the "CARES Act"), Pub.
   L. No. 116-136, 134 Stat. 281 (2020).

ME1 48164669v.1

2. Squire's preferred lender reviewed its loan application and granted the PPP loan under the rules that were in effect at the time of its application, on April 3, 2020.  On April 15, 2020, Squire was approved for a PPP loan.

3. Shortly thereafter, on April 15, 2020, the SBA published an Interim Final Rule ("IFR #1"). *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020).  Among other things, IFR #1 stated that the SBA would apply its pre-existing rules and operating procedures to the loans it administered under the CARES Act, including rules that limit the availability of loans for certain classes of businesses.  *See id*. at 20812.  Such limitations were not specifically included in the CARES Act at the time of Squire's loan.

4. When Squire applied for the PPP loan, it was promised that, as long as the loan money was used on allowable expenses, its loan would be forgiven.  Squire held up its end of the bargain, and used the funds for the appropriate expenses.  The SBA has never alleged that Squire misrepresented its business at the time of its application or that Squire did not use its PPP loan for allowable expenses.

5. At the appropriate time, Squire applied for the as-promised forgiveness of its PPP loan.

6. Surprisingly, Squire's application for forgiveness was denied, first by the lender and then by the SBA.  These denials were based on the apparent determination that Squire was not, in fact, eligible for the loan in the first place.  The SBA, in its Final Decision, determined that Squire belongs to a class of businesses that are excluded from loans under SBA operating procedures and IFR #1.

7. Squire then properly appealed this decision to the SBA's Office of Hearings and Appeal ("OHA").  The OHA affirmed the SBA's Final Decision.

ME1 48164669v.1

8.  Squire, therefore, challenges the SBA's application of rules that exclude certain classes of business to the PPP program under the CARES Act, in particular the application to PPP loans that were applied for prior to the publication of IFR #1, including Squire's.

9.  The SBA decision to deny forgiveness of Squire's loan was legally and factually incorrect, at least because at the time Squire applied for the PPP loan, no rule or regulation limited eligibility for any businesses, including businesses such as Squire's.

10. The only reason for denying forgiveness of the loan was the *post hoc* determination of ineligibility based on IFR #1, which was published more than ten days after Squire applied for the PPP loan.  Squire, therefore, necessarily relied on pre-IFR #1 criteria when it applied for that loan.

11. Squire was, at no time, informed that the SBA operating procedures, including the exclusions, would be applied to the PPP loan or that Squire might be among a class of businesses that were considered ineligible for PPP loans.  If Squire had been aware that these eligibility restrictions would be, or could be, applied to its loan, it would not have pursued the PPP loan.

12. Further, there is no evidence that the lender was aware of or applied the SBA operating procedures or IFR #1 to Squire's application at the time it was approved or disbursed.

13. The SBA's denial of loan forgiveness was contrary to Squire's due process rights under the United States Constitution, contrary to the Administrative Procedures Act, and contrary to the CARES Act as it existed at the time Squire applied for the loan.

14. The SBA's denial of loan forgiveness was arbitrary and capricious at least because the SBA apparently made its forgiveness determination based on IFR #1, which was not in effect at the time of Squire's loan application; the SBA changed the rules and used different eligibility

3

criteria when approving Squire's loan than it applied when making its loan forgiveness decision.

15. The SBA's legally and factually incorrect, and arbitrary and capricious loan forgiveness determination has caused significant financial harm to Squire, at least because the lender is now requiring that Squire repay a loan that should have been forgiven.  Squire incurred the loan on the promise that it would be forgiven if used for allowable expenses, including at least continuing to pay employees during the time its business was closed; had Squire been informed that forgiveness would not be available, it would not have taken out the loan or incurred payroll and other expenses during the time its business was shut down by government mandate.

16. Therefore, and for the reasons alleged below, the Court should review and reverse the SBA's decision and direct the SBA to forgive Squire's PPP loan.

## **PARTIES**

17. Plaintiff MFRP Corp., d/b/a Squire Nightclub is a Massachusetts limited liability company with a principal place of business at 604 Squire Road, Revere, MA  02151.

18. Defendant SBA is an independent federal agency created and authorized pursuant to 15 U.S.C. § 633 *et seq*.  Under the CARES Act, the SBA administers the PPP.

19. Defendant Isabella Casillas Guzman (the "Administrator") is the Administrator of the SBA and is sued in her official capacity only, as the Administrator of the SBA.  Authority to sue the Administrator is granted by 15 U.S.C. §634(b).

20. Defendant Janet Yellen is the Secretary of the United States Department of Treasury and is named as defendant only in her official capacity.  Because she is the officer with final authority on all matters relating to the Department of Treasury consulting with the SBA for the

implementation of the PPP, Secretary Yellen is a proper defendant for causes of action brought under the APA.

21. Defendant United States of America ("United States") is a named party pursuant to 5 U.S.C. §§ 702, 703. The actions complained of were taken by the United States through its officials or agencies, including the SBA and the Administrator.

## VENUE AND JURISDICTION

22. This Court has jurisdiction over this dispute under 28 U.S.C. §§ 1331, 1346(a)(2), 1361 and/or 2201. Authority for judicial review of agency action is further provided by 5 U.S.C. § 702.

23. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 at least because the Plaintiff resides in this judicial district.

24. The SBA's review and denial of the Plaintiff's appeal through the SBA's Office of Hearings and Appeal ("OHA") became final on December 28, 2023, 30 days after service of the OHA Decision. 13 C.F.R. § 134.1211(d).

25. Plaintiff is entitled to judicial review of the SBA Final Decision and the OHA Decision. *See* 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court."); 13 C.F.R. § 134.1211(g) ("***Appeal to Federal district court.*** Final decisions may be appealed to the appropriate Federal district court only.") (emphasis in original).

## FACTUAL BACKGROUND

### The CARES Act

26. On March 25, 2020, Congress passed the CARES Act to mitigate the economic devastation caused by the COVID-19 pandemic. Pub. L. No. 116-136, 134 Stat. 281 (2020). Part of the

5

CARES Act included the PPP, which provided the SBA with the funding and authority to operate a loan program designed to financially assist small businesses with their cash-flow during the COVID-19 pandemic.  *See id*. at § 1102; 15 U.S.C. § 636.  The CARES Act was signed into law by the President on March 27, 2020.

27. Section 1106 of the CARES Act, codified at 15 U.S.C. § 636m, sets out the conditions of loan forgiveness for PPP loan recipients.  *See* 15 U.S.C. § 636m(b), (d).

> An ***eligible recipient shall*** be eligible for forgiveness of indebtedness on a ***covered loan*** in an amount equal to the sum of the following costs incurred and payments made during the covered period: (1) Payroll costs.  (2) Any payment of interest on any covered mortgage obligation (which shall not include any prepayment of or payment of principal on a covered mortgage obligation).  (3) Any payment on any covered rent obligation.  (4) Any covered utility payment. (5) Any covered operations expenditure. (6) Any covered property damage cost. (7) Any covered supplier cost.  (8) Any covered worker protection expenditure.

*Id.* at (b) (emphasis added).

28. Under 15 U.S.C. § 636m(a)(10), the term "eligible recipient" means the recipient of a covered loan.

29. A "covered loan" is "a loan guaranteed under section 636(a)(36) of this title [the Payroll Protection Program]."  *Id.* at (a)(1).

30. Therefore, pursuant to the wording of the statute, if Squire received a Payroll Protection loan, Squire ***shall*** be eligible for forgiveness of all allowable amounts.  There is nothing in the CARES Act as it existed on April 3, 2020, when Squire applied for its loan, that would have excluded businesses such as Squire.  *See* § 15 U.S.C. 636(a)(36)(D)(i) (allowing "increased eligibility for certain small business and organizations" including, without relevant exception, "any business concern" that "employs not more than 500 employees").

6

## SBA Administration of PPP Loans

31. The SBA regulations for non-CARES Act 7(a) loans excluded a wide range of businesses including banks, real-estate developers, churches, finance companies, gambling establishments, adult entertainment businesses (*i.e.,* businesses of a so-called "prurient sexual nature,") and life insurance companies ("SBA Exclusions").

32. Prior to the enactment of the CARES Act, the SBA also developed standard operating procedures to implement its regulations for each then existing loan program. *See* 13 C.F.R § 120.

33. The SBA utilizes SOP 50 10 5(K), "Lender and Development Company Loan Programs," to "conform to recently revised regulations in 13 CFR Part 120, and to provide guidance that clarifies and streamlines policy and procedures affecting the 7(a) and 504 programs." *See* Ex. A, SOP 50 10 (K), at 1. SOP 50 10 5(K) (the "SOP"), in effect at the time of Squire's PPP loan, became effective on April 1, 2019, almost a full year prior to enactment of the CARES Act and the beginning of the COVID-19 pandemic. *Id.*

34. In relevant part, the SOP, at Section III(A)(15)(c), requires:

> If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities.

*Id.* at 114.

35.  On its face, the SOP requires a lender to "document and submit the analysis and supporting documentation" to the SBA for a determination of eligibility ***before*** the loan is approved "for a final Agency decision on eligibility."  *Id.*

36. Squire was never notified of any such determination before its loan was approved, and upon information and belief, such a determination was not made before Squire's loan was approved.

37. On April 15, 2020, after Squire applied for its PPP loan, the SBA issued IFR #1, which imposed its agency-developed, pre-COVID-19, pre-CARES Act SBA loan eligibility exclusions, including the exclusions discussed in the SOP, above, onto PPP eligibility.

<u>**Squire is Eligible for and Obtains an PPP Loan**</u>

38. Squire is a nightclub, with its primary source of revenue derived from the provision of alcoholic beverages.  Squire features live entertainment and hosts a number of promotions and events around sports events and the holidays.

39. On April 3, 2020, Squire, through its authorized representative Mr. Robert Depesa, submitted the Borrower Application Form for the Paycheck Protection Program, SBA Form 2483 (the "Application"), to its preferred lender TD Bank, National Association ("TD Bank" or "Lender").

40. In relevant part, the Application contained the following "Certifications and Authorizations":

   a.  "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule)."

8

b. "I acknowledge that the lender will confirm the eligible loan amount using required documents submitted.  I understand, acknowledge and agree that the Lender can share any tax information that I have provided with SBA's authorized representatives of the SBA Office of the Inspector General, for the purpose of compliance with SBA Loan Program Requirements and all SBA reviews."

Ex. B, MRFP Loan Application.

41. The Application did not include any mention of the SBA Exclusions or any other SBA regulation that might limit Squire's eligibility for the loan.

42. On April 15, 2020, Loan No. 1739467202 (the "Loan"), in the amount of $243,750.00 at a 1% fixed interest rate was approved and Squire received the loan proceeds on April 27, 2020.  Ex. C, OHA Final Decision at 1.

43. On August 4, 2021, Squire submitted a PPP Loan Forgiveness Application Form 3508 through the Lender.  Ex. D, MFRP Application for Loan Forgiveness.

44. On August 19, 2021, the Lender determined that Squire should receive no loan forgiveness. Ex. C at 1.

45. On September 7, 2023, the SBA Office of Capital Access issued a final loan review decision providing Squire with $0.00 of PPP loan forgiveness.  Ex. E, SBA Final Decision at 1-2. According to the SBA Final Decision, the SBA had reviewed the applicant's website and determined that Squire's business was "providing Prurient Sexual Material" and this rendered it ineligible for the PPP loan (granted three years before) and correspondingly ineligible for loan forgiveness.[1]  *See id.*

---

[1] Squire's website did not change substantively between April 2020 and September 2023.

ME1 48164669v.1

46. Squire timely appealed the SBA Final Decision to the SBA Office of Hearings and Appeals. Ex. C. at 1.

47. On November 28, 2023, the OHA issued its Decision affirming the SBA's denial of forgiveness based on its determination that that Squire was ineligible under the SBA's IFR #1 "which provides PPP loan eligibility is determined solely at the time of filing a PPP Borrower Application Form 2483."  Ex. C at 4.

48. The OHA Decision specifically found that "IFR #1, *which was available to [MFRP] at the time of submitting its PPP loan application to the Lender* applies to PPP loan applications submitted through June 30, 2020.  The same advised all PPP lenders and applicants of the basic PPP eligibility criteria, including the incorporation of 13 C.F.R. § 120.110 and SOP 50 10.  It specifically informed PPP lenders and applicants that '[b]usinesses that are not eligible for PPP loans are identified in 13 C.F.R. 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B Chapter 2, except that nonprofit organizations authorized under the Act are eligible.'" *Id.* at 7, quoting 85 Fed. Reg. at 20812 (emphasis added), citing Ex. A.

49. As discussed above, this is incorrect.  IFR #1 was published more than 10 days after Squire submitted its loan application, and therefore was *not* available to Squire at the time of its application.

50. The OHA Decision specifically noted that "Due process requires the government provide citizens and other actors with sufficient notice as to what behavior complies with the law. . . . SBA and the U.S. Treasury Department did so by posting IFR #1 on their websites immediately prior to the opening of the PPP."  Ex. C at 7, citing *U.S. v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008).

51. The OHA Decision further states that "ALJs presiding over OHA PPP appeals on behalf of SBA are bound by SBA's First IFR *available at the time* . . ." (emphasis added) citing 85 Fed. Rg. 20,812, issued April 15, 2020.

52. As discussed above, IFR #1 was not published until April 15, 2020, which was not, in fact, "available at the time" of Squire's Application.

## LEGAL STANDARDS

### SBA's Final Agency Action was Unsupported by Substantial Evidence and Unwarranted by the Facts

53. The Administrative Procedures Act ("APA") directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions" that are: "(E) unsupported by substantial evidence . . . or; (F) unwarranted by the facts . . ." 5 U.S.C. § 706(2)(E)-(F). *See Faulkner Hospital Corp. v. Schweiker*, 537 F.Supp. 1058, 1064 (D. Mass. 1982) (reversing agency decision not supported by substantial evidence where it relied on evidence that was irrelevant or not supported by a proper interpretation of the statute and therefore was not "adequate to support the conclusion reached").

54. Upon information and belief, before the issuance of IFR #1, lenders, including the Lender that issued Squire's loan, did not apply the SBA Exclusions to PPP loans. Similarly, prior to IFR #1, Applicants were not on notice that the SBA Exclusions would be applied to PPP loans.

55. Squire submitted its Application on April 3, 2020, including all of the relevant representations. None of these representations concerned the SBA rules or regulations, or eligibility considering the SBA Exclusions.

56. There is no contention in the SBA Final Decision or the OHA Decision that Squire made any misrepresentations or material omissions in the Application, because it did not.

11

57. At no time did Squire obfuscate or misrepresent the nature of its business to the Lender or the SBA.

58. Contrary to the facts relied upon in the OHA Decision, at the time of Squire's Application and Note, IFR #1 had not issued.  Therefore, there was no basis for applying the SBA Exclusions to the Squire PPP loan.

59. Contrary to the facts relied upon in the OHA Decision, Squire had no notice that its PPP loan might be subject to the SBA Exclusions.

60. Therefore, substantial evidence did not support the SBA and OHA Decisions, and the SBA and OHA Decisions were not warranted by the facts presented.

### The SBA's Decision was Contrary to Law

61. The APA directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions" that are: "(B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law."  5 U.S.C. § 706(2)(B)-(D).

62. *First*, the due process protections of the U.S. Constitution require that Squire be notified of the SBA's eligibility requirements for the PPP loan.  U.S.C.A. Const. Amend. X.

63. "[B]ecause we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

64. This was admitted in the OHA Decision, which stated that "[d]ue process requires the government provide citizens and other actors with sufficient notice as to what behavior

12

complies with the law. . .". Ex. C at 7, citing *U.S. v. AMC Entm't, Inc.*, 549 F.3d 760, 768 (9th Cir. 2008).

65. As discussed above, it is undeniable that the SBA Exclusions were not specifically included in the text of the CARES Act as it existed on April 3, 2020, when Squire applied for the PPP loan, and the SBA's decision that the SBA Exclusions would be applied to PPP loans was not announced to the public until April 15, 2020, when IFR #1 issued.

66. Therefore, Squire had no notice, until forgiveness of its PPP loan was denied, that the SBA Exclusions could or would be applied to the PPP loan it received.  This lack of notice violates Squire's due process rights.

67. *Second*, SBA's application of the SBA Exclusions to the CARES Act is contrary to the plain text of the CARES Act.

68. Specifically, 15 U.S.C. § 636(a)(35)(D)(i) makes "all business concerns," as described in the CARES Act, eligible for PPP loans.  *See Camelot Banquet Rooms, Inc. v. United States Small Business Administration*, 458 F.Supp.3d 1044, 1055-1056 (E.D. Wis. 2020) (noting that "no provision of the CARES Act relating to the PPP creates classifications of small businesses or provides that certain kinds of small businesses are not within the scope of the PPP" and holding, in relevant part, that the application of the SBA Exclusions to first-draw PPP loans "exceeds the scope of the regulatory authority Congress granted the SBA in the CARES Act"). Therefore, the application of the SBA Exclusions to Squire's PPP loan exceeded the SBA's statutory authority.

69. *Finally*, even if the SBA Exclusions were properly applied to an application submitted before IFR #1 was published, as discussed above, the SBA failed to follow the procedures included in the SOP that should have governed its application of these exclusions.  There is no indication

that any determination of ineligibility under the SBA Exclusions was considered by the Lender at the time the loan was approved, and no indication that the SBA confirmed any such determination as required by the SOP.

70. To the extent that the CARES Act authorizes the Lender to rely on the applicant's certifications in allowing PPP loans, there were no relevant certifications in Squire's Application or Note regarding SBA Exclusions.  Squire never obfuscated the nature of its business and neither the Lender nor any of the certifications included with the Application ever inquired about the nature of Squire's business.

71. Therefore, it was contrary to due process to apply the SBA Exclusions to Squire's loan because it was applied for before the publication of IFR #1; it was contrary to the CARES Act to apply the SBA Regulations to first-draw loans, generally; it was contrary to SBA Regulations and operating procedures to apply the "prurient sexual nature" exclusion at the forgiveness phase without at least an SBA determination that this exclusion applied at the application phase.

**The SBA's Decision was Arbitrary, Capricious, and an Abuse of Discretion**

72. The APA directs reviewing courts to "hold unlawful and set aside agency action, findings, and conclusions" that are: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

73. A rule is arbitrary and capricious if (1) the agency "has relied on factors which Congress has not intended it to consider;" (2) the agency "entirely failed to consider an important aspect of the problem;" (3) the agency's explanation "runs counter to the evidence before the agency;" or (4) the explanation "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 at 43 (1983).

14

74. As discussed above, the SBA applied standards, including the SBA Exclusions, to Squire's PPP loans that were not intended by Congress, particularly before IFR #1 issued.[2]

75. Additionally, the SBA abused its discretion when it applied a different standard to forgiveness of Squire's loan than it applied to the issuance of the loan.

76. Effectively, the Lender and SBA induced Squire into applying for a loan, with the promise of forgiveness, issued the loan (indicating to Squire that it was, in fact, eligible for the loan), and then denied forgiveness by asserting that Squire was never eligible to begin with, based on rules that did not go into effect until after the Application was signed.

77. Basic fairness dictates that the eligibility standards applied at application are the same standards that apply at the forgiveness phase.  Having granted the loan to Squire—and with no contention that Squire obfuscated the nature of its business or otherwise made factually incorrect representations in its application—the SBA cannot properly revoke eligibility at the forgiveness phase.  *See Camelot Banquet Rooms, Inc. v. United States Small Business Administration*, 555 F.Supp.3d 598, 609 (E.D. Wisc. Aug. 19, 2021).

78. Therefore, having properly granted Squire the PPP loan based on the eligibility rules in place at the time Squire applied for the loan, the SBA has "no choice but to grant [it] loan forgiveness if [it] used the loan proceeds for payroll and other qualifying expenses."  *Id.*

79. Fundamentally, the SBA's application of different rules at the forgiveness phase than it did at the application phase was arbitrary and capricious.

## FIRST CLAIM FOR RELIEF (JUDICIAL REVIEW)

80. The allegations contained in the foregoing paragraphs are realleged and restated herein.

---

[2] The CARES Act was amended by Congress in December 2020 to provide so-called "second draw loans"; this amendment specifically includes the SBA Exclusions, indicating that if Congress intended these exclusions to apply, they would have codified them.

ME1 48164669v.1

81. This Court is authorized and empowered to review the Final Decision and OHA Decision.

82. The Final Decision and OHA Decision were based on errors of fact, errors of law, and were arbitrary and capricious, all in violation of 5 U.S.C. § 706(2).

83. The Court should hold the Final Decision and OHA Decision to be unlawful and should set them aside and direct the SBA to grant Squire forgiveness of its PPP loan, in its entirety.

## SECOND CLAIM (DECLARATORY JUDGMENT)

84. The allegations contained in the foregoing paragraphs are realleged and restated herein.

85. There is an actual and existing controversy between the parties as to the propriety of SBA's application of the SBA Exclusions to Squire's loan.

86. The SBA's application of the SBA Exclusions to Squire's loan was not supported by substantial evidence and unwarranted by the facts, was legal error and made in excess of SBA's statutory authority, and was arbitrary and capricious and constituted an abuse of discretion in direct violation of 5 U.S.C. § 706(2).

87. Squire is entitled to a judgment declaring that the SBA's application of the SBA Exclusions to its loan was not supported by substantial evidence and unwarranted by the facts, was legal error and made in excess of SBA's statutory authority, and was arbitrary and capricious and/or constituted an abuse of discretion in direct violation of 5 U.S.C. § 706(2).

88. Squire is entitled to a judgment declaring that the SBA's application of the SBA Exclusions to its loan was error and the resulting Final Decision and OHA decision were issued in error, and that Squire's PPP loan should be forgiven.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff , respectfully prays that the Court grant it the following relief:

16

i.       Reverse and set aside the Final Decision and OHA decision and direct the SBA to

         issue a new decision on Squire's forgiveness application, forgiving its PPP loan;

ii.      Declare that the application of SBA Exclusions to Squire's PPP loan and

         application for forgiveness is not authorized by, and is contrary to, law;

iii.     Declare that the application of SBA Exclusions to Squire's PPP loan and

         application for forgiveness was not supported by substantial evidence and

         unwarranted by the facts;

iv.      Declare that the application of SBA Exclusions to Squire's PPP loan and

         application for forgiveness was legal error and made in excess of SBA's statutory

         authority, and

v.       Declare that the application of the SBA Exclusions to Squire's PPP loan and

         application for forgiveness was arbitrary and capricious and constituted an abuse

         of discretion;

vi.      Award costs and reasonable attorneys' fees to the extent permitted by law; and

vii.     Grant such other relief as this Court may deem just and proper.


Dated: May 9, 2024                           Respectfully submitted,


                                             By:  /s/ *Leigh J. Martinson*

                                             Leigh J. Martinson, BBO # 658699
                                             lmartinson@mccarter.com
                                             Leah R. McCoy, BBO #673266
                                             lmccoy@mccarter.com
                                             McCarter & English LLP
                                             265 Franklin Street
                                             Boston, MA 02110

17

Tel. (617) 449-6500
Fax. (617) 607-9200

*Attorneys for Plaintiff M.F.R.P. Corp., d/b/a*
*Squire Nightclub*

18

ME1 48164669v.1